UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JONATHAN KING MEYER,

        Plaintiff,                                         Hon. Robert J. Jonker

v.                                                   Case No. 1:20-cv-989

ALLEGAN COUNTY, et al.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Jonathan King Meyer filed a pro se complaint pursuant to 42 U.S.C. § 1983 against the County of Allegan, the State of Michigan, Kevin Cronin, a former judge of the 48th Circuit Court in Allegan County, and Robert Kengis, a current judge of the 48th Circuit Court, alleging claims for denial of due process, cruel and unusual punishment and illegal search and seizure arising out of his May 14, 2012 conviction of a single count of First Degree Criminal Sexual Conduct (CSC I) in violation of Mich. Comp. Laws § 750.520b(2)(d). Meyer subsequently filed a first amended complaint adding Bob Genetski, the Allegan County Clerk, and Dana Nessel, the Michigan Attorney General, as Defendants. (ECF No. 12.)

The State of Michigan and Defendant Nessel (the State Defendants) and Allegan County and Defendants Cronin, Kengis, and Genetski (the County Defendants) have filed motions to dismiss Meyer's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and (b)(6) for

lack of jurisdiction and failure to state a claim.[1] (ECF Nos. 17 and 22.) Pursuant to 28 U.S.C. §

636(b)(1)(B), I recommend that both motions be **GRANTED**.[2]

## I.   Background

On May 14, 2012, Meyer pled guilty to one count of CSC I in the 48th Circuit Court before

Defendant Cronin. Plaintiff admitted to having sexual contact with a teenage employee of his

company who was over the age of 13 but less than 16. (ECF No. 1 at PageID.3–4, ECF No. 1-4 at

PageID.24.) Defendant Cronin sentenced Plaintiff on September 10, 2012 to a term of

imprisonment of six to 20 years. The original Judgment of Sentence (JOS) was entered on the same

date. Box 11 on the original JOS for "Lifetime Monitoring" was not checked. (*Id.* at PageID.4.)

On February 13, 2013, without notice to Meyer, Defendant Cronin *sua sponte* entered an amended

JOS which added the following: "The defendant is subject to lifetime monitoring under MCL

750.520n." (*Id.*) The court failed to notify Meyer or his attorney of any hearing as required by

Michigan Court Rule 2.107, and Meyer was not returned to the court for resentencing. In fact,

Meyer was not notified of the amended JOS until July 1, 2019. (*Id.*)

Meyer was paroled from the Michigan Department of Corrections (MDOC) on January 18,

2018. His parole documents did not indicate that he was subject to "Lifetime Electronic

Monitoring." On July 11, 2019, however, as Meyer was preparing to discharge from parole, his

parole agent informed him that he was subject to lifetime monitoring due to the amended JOS. (*Id.*

---

[1] The State of Michigan initially filed a motion to dismiss on October 27, 2020 (ECF No. 6), and Defendant Cronin filed his own motion on November 9, 2020 (ECF No. 15). Subsequently the Allegan County Defendants filed their instant motion to dismiss, also on behalf of Defendant Cronin, on November 12, 2020. The State Defendants filed the instant motion to dismiss in response to Meyer's first amended complaint on November 18, 2020.

[2] Although Meyer and the Allegan County Defendants have requested oral argument, the Court determines that the parties' briefs have adequately developed the issues, and oral argument is unnecessary.

at PageID.4–5.) On July 12, 2019, Meyer filed a Motion to Correct Invalid Sentence. The Allegan

County Prosecutor notified the Michigan Attorney General's office about the matter. During a

hearing on October 10, 2019, Defendant Kengis, who was now handling the case after Defendant

Cronin's retirement, told Meyer to re-file his motion with the Michigan Attorney General's office.

Meyer thereafter provided his motion to the Michigan Attorney General's office in both Lansing

and Detroit. (*Id.* at PageID.5–6.)

During a hearing on Meyer's motion on January 15, 2020, Defendant Kengis noted that in

*People v. Comer*, 500 Mich. 278 (2017), the Michigan Supreme Court indicated that lifetime

electronic monitoring would apply to Meyer's sentence, but that it also noted that a court should

not *sua sponte* amend a sentence to impose such condition. (ECF No. 1-12 at PageID.88.)

Defendant Kengis held that Meyer's motion to correct invalid sentence was untimely under

Michigan Court Rule 6.429, but indicated that Meyer might seek relief in a motion under Michigan

Court Rule 6.500. (*Id.* at PageID.88–89.) On January 17, 2020, Meyer filed a motion for

reconsideration, which Defendant Kengis denied on February 14, 2020. (ECF No. 1 at PageID.6.)

Meyer filed a motion for leave to appeal to the Michigan Court of Appeals. On June 22,

2020, the court of appeals entered an order remanding the matter to Defendant Kengis to consider

Meyer's motion to correct invalid sentence as a Rule 6.500 motion and determine whether the

failure to notify Meyer of the amended JOS within the period in which he could have filed a notice

of appeal or a motion to correct invalid sentence satisfied the good cause requirement under Rule

6.508(D)(3)(a). (ECF No. 1-22 at PageID.154.) On July 30, 2020, on remand, Defendant Kengis

entered an order determining that the good cause requirement of Rule 6.508(D)(3)(a) was satisfied

and ordering the Attorney General's office to respond to Meyer's motion. (ECF No. 1-28 at

PageID.168.) On September 22, 2020, Defendant Kengis granted Meyer's motion, vacating the

amended JOS and reinstating the September 10, 2012 JOS without lifetime monitoring. (ECF No. 1-30 at PageID.178.)

Earlier, on March 16, 2020, Meyer filed a civil suit in the 48th Circuit Court seeking a hearing to have his tether removed. (ECF No. 1 at PageID.6.) In that action, Meyer sued Allegan County and the State of Michigan. (ECF No. 1-19 at PageID.131.) The case was assigned to Defendant Kengis. Meyer filed a motion to recuse Defendant Kengis, which Defendant Kengis apparently never addressed. (ECF No. 1 at PageID.7; ECF No. 1-20.) On April 20, 2020, Allegan County filed a motion to dismiss, arguing, among other things, that the County had no control over the judicial decisions of which Meyer complained. (ECF No. 18-2 at PageID.251–52.) On July 6, 2020, Defendant Kengis entered an order granting the County's motion and dismissing the case with prejudice. (ECF No. 18-3 at PageID.256–57.)

In the present action, Meyer seeks compensatory and punitive damages against all Defendants for the time that he was required to wear the electronic monitoring device following the conclusion of his parole. He also "requests that this Honorable Court examine the Constitutionality of Michigan's Lifetime Electronic Monitoring program for sex offenders who are not on probation, parole, bail, bond, or other government supervision." (ECF No. 1 at PageID.16.)

## II.  Motion Standards

A motion to dismiss under Rule 12(b)(1) may come in the form of either a "facial attack" or a "factual attack." *O'Bryan v. Holy See*, 556 F.3d 361, 375 (6th Cir. 2009). A facial attack "questions merely the sufficiency of the pleadings." *Id.* at 376.

> "[W]hen reviewing a facial attack, a district court takes the allegations in the complaint as true.... If those allegations establish federal claims, jurisdiction exists." However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."

*Id.* (internal citations omitted). "A factual attack, on the other hand, is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). Here, the State Defendants' and Defendants Cronin and Kengis's assertion of Eleventh Amendment immunity constitutes a facial attack on this Court's jurisdiction. *See Edwards v. Commonwealth of Ky. Revenue Cabinet*, 22 F. App'x 392, 393 (6th Cir. 2001) ("Eleventh Amendment immunity constitutes a jurisdictional bar, and neither supplemental jurisdiction nor any other basis for jurisdiction overrides Eleventh Amendment immunity.") (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)). Absolute judicial immunity is likewise a jurisdictional defense that, in this instance, presents a facial challenge. *See Leech v. DeWeese*, 689 F.3d 538, 540 (6th Cir. 2012) (characterizing absolute judicial immunity as a jurisdictional defense).

A Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief may be granted tests the legal sufficiency of a complaint by evaluating its assertions in a light most favorable to Plaintiff to determine whether it states a valid claim for relief.[3] *See In re NM Holdings Co., LLC*, 622 F.3d 613, 618 (6th Cir. 2010). Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed for failure to state a claim on which relief may be granted unless the

---

[3] "Generally, amended pleadings supersede original pleadings." *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 617 (6th Cir. 2014) (citing 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1476 (3d ed. 2010)). "If, however, the party submitting the pleading clearly intended the latter pleading to supplement, rather than supersede, the original pleading, some or all of the original pleading can be incorporated in the amended pleading." *Clark v. Johnston*, 413 F. App'x 804, 811–12 (6th Cir. 2011); *see also Anson v. Corrections Corp. of Am.*, No. 4:06 CV 1672, 2007 WL 1467058, at *1 n.2 (N.D. Ohio May 16, 2007) ("Although an amended complaint takes the place of the original pleading, this one is clearly intended to supplement and not replace the original complaint. The court will therefore construe them together, and will refer to them collectively as the amended complaint."). Here, Meyer has made clear his intention that his first amended complaint is to supplement, rather than replace, his original pleading as he expressly incorporates the original pleading by reference. (ECF No. 12 at PageID.205.) Accordingly, both pleadings will be construed together.

"[f]actual allegations [are] enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). As the Supreme Court has held, to survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the complaint simply pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* As the Court further observed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678-79.

When resolving a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider the complaint and any attached exhibits, public records, items appearing in the record of the case, and exhibits attached to the defendant's motion to dismiss provided they are referenced in the complaint and central to the claims therein. *See Bassett v. Nat'l Collegiate Athletic Ass'n.*, 528 F.3d 426, 430 (6th Cir. 2008).

### III. Discussion

#### A. State Defendants' Motion

##### 1. Eleventh Amendment Immunity

The State Defendants contend that all of Meyer's claims against the State and his claims for money damages against Defendant Nessel in her official capacity are barred by the Eleventh Amendment. They are correct.

The Eleventh Amendment generally bars federal actions against a state unless the state has waived its sovereign immunity or consented to suit in federal court. *Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008). The State of Michigan has not consented to be sued for civil rights

violations in federal court. *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 545 (6th Cir. 2004). A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). An official capacity suit is thus no different than a suit against the state itself. *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) ("A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity."). Because the Eleventh Amendment prohibits suits for damages against states in federal court, *see Quern v. Jordan*, 440 U.S. 332, 342 (1979), damage claims against state officials in their official capacities are also barred by the Eleventh Amendment. *See Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005) (noting that Eleventh Amendment immunity "applies to actions against state officials sued in their official capacity for money damages") (citing *Lapides v Bd. of Regents*, 535 U.S. 613, 616, 623 (2002)). Moreover, a state official sued in his official capacity is not a "person" subject to suit for money damages under Section 1983. *Will*, 491 U.S. at 70–71. Accordingly, Meyer's claims against the State and against Defendant Nessel in her official capacity are barred by the Eleventh Amendment.

Meyer contends that he may still sue Defendant Nessel in her official capacity to obtain prospective injunctive relief pursuant to *Ex parte Young*, 209 U.S. 123 (1908). *See S&M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008) (noting that "[u]nder the *Ex parte Young* exception, a federal court can issue prospective injunctive and declaratory relief compelling a state official to comply with federal law"). This argument lacks merit because Meyer does not request prospective injunctive or declaratory relief in his complaint. Moreover, he lacks standing to seek such relief because the amended JOS was vacated before Meyer filed the instant suit, and he is no longer subject to lifetime electronic monitoring. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (noting that for claims of injunctive or declaratory relief, "a plaintiff must show that

he is under threat of suffering 'injury in fact' that is concrete and particularized," and that "threat

must be actual and imminent, not conjectural or hypothetical"). Because Meyer does not argue that

there is an imminent likelihood that he will re-offend, the Court lacks jurisdiction under Article III

to grant such relief. For the same reasons, the Court lacks Article III jurisdiction to entertain

Meyer's request to consider the constitutionality of Mich. Comp. Laws § 750.520n

### 2.      Qualified Immunity

The State Defendants also argue that Defendant Nessel is entitled to qualified immunity on

Meyer's individual capacity claim. The doctrine of qualified immunity provides that government

officials performing discretionary functions are generally shielded from liability for civil damages

insofar as their conduct does not violate clearly established statutory or constitutional right of

which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982);

*Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999). An "objective legal reasonableness"

test is used to determine whether the official could reasonably have believed his conduct was

lawful. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). The qualified immunity inquiry requires

a court to decide whether the facts as alleged or shown make out a constitutional violation and

whether the right that was allegedly violated was a clearly established right at the time of the

alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). If the court can conclude that

either no constitutional violation occurred or that the right was not clearly established, qualified

immunity is warranted. The court may consider either prong of the inquiry without regard to

sequence. *Id.* at 236.

Here, qualified immunity can be decided at the first step because Meyer alleges no fact in

his complaint indicating that Defendant Nessel was personally involved in the violation of Meyer's

clearly established constitutional rights. She is not mentioned at all in his factual allegations. In

order to impose liability under 42 U.S.C. § 1983, a plaintiff must show that a defendant was

personally involved in the unconstitutional conduct. *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008). Because Meyer does not even state a plausible constitutional violation against Defendant Nessel, his individual capacity claim against her must be dismissed.[4]

### B.      County Defendants' Motion

#### 1.      Eleventh Amendment Immunity

The County Defendants correctly argue that the Eleventh Amendment bars Meyer's official capacity claims against Defendants Cronin and Kengis. *See LaFountain v. Meyer*, No. 1:16-cv-658, 2016 WL 3679279, at *2 (W.D. Mich. July 12, 2016) ("The Sixth Circuit Court of Appeals has already considered the application of Eleventh Amendment immunity to Michigan state courts. The Sixth Circuit determined that Michigan's courts are arms of the state and thus entitled to Eleventh Amendment immunity.") (citing *Pucci v. 19th District Court*, 628 F.3d 752, 760–74 (6th Cir. 2010)); *Varner v. Schrock*, No. 1:14-cv-999, 2014 WL 5441807, at *3 (W.D. Mich. Oct. 24, 2014) (noting that the plaintiff's suit against the clerk in her official capacity was equivalent to a suit brought against the circuit court and that "[t]he circuit courts of the State of Michigan are arms of the state and, thus immune from suit"). Accordingly, the official capacity claims against Defendants Cronin and Kengis must be dismissed.

---

[4] The State Defendants also argue that the *Rooker-Feldman* doctrine bars Meyer's claims. The doctrine, rooted in the Supreme Court's decisions in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), provides that lower federal courts are without authority to review final judgments of state courts. This is because "only the Supreme Court of the United States has the jurisdiction to review state court decisions." *Coleman v. Governor of Michigan*, 413 F. App'x 866, 870 (6th Cir. 2011) (citing *Rooker*, 263 U.S. at 416). The Supreme Court has clarified that the doctrine is limited to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Given the other appropriate bases for dismissal, the Court need not consider the *Rooker-Feldman* argument. Nonetheless, because Meyer is not a state-court loser, it is questionable whether the doctrine applies.

####     2.     **Absolute Judicial Immunity**

The County Defendants argue that Defendants Cronin and Kengis are entitled to absolute

immunity for actions they took as judges in Meyer's criminal case. It is well established that a

judge is absolutely immune from suit seeking monetary relief, so long as the judge was performing

judicial functions. *See Mireles v. Waco*, 502 U.S. 9, 9–10 (1991). "[J]udicial immunity is an

immunity from suit, not just from ultimate assessment of damages." *Id.* at 11. The "immunity

applies to actions brought under 42 U.S.C. § 1983 to recover for alleged deprivation of civil rights."

*Stern v. Mascio*, 262 F.3d 600, 606 (6th Cir. 2001). A judge is not immune (1) where the judge's

alleged actions were not taken in the judge's judicial capacity, or (2) where the actions, although

judicial in nature, were taken in the complete absence of jurisdiction. *Mireles*, 502 U.S. at 11–12.

"[T]he scope of the judge's jurisdiction must be construed broadly where the issue is the immunity

of the judge. A judge will not be deprived of immunity because the action he took was in error,

was done maliciously, or was in excess of his authority; rather, he will be subject to liability only

when he has acted in the 'clear absence of all jurisdiction.'" *Stump v. Sparkman*, 435 U.S. 349,

356–57 (1978) (quoting *Bradley v. Fisher*, 80 U.S. 335, 351 (1871)). "Whether an act is judicial

depends on the nature and function of the act, not the act itself." *Barnes v. Winchell*, 105 F.3d

1111, 1116 (6th Cir. 1997) (internal quotation marks omitted) (quoting *Mireles*, 502 U.S. at 13).

The analysis involves two considerations: "(1) looking to the nature of the act itself, whether the

act is a 'function normally performed by judge' and (2) regarding the expectations of the parties,

whether the parties 'dealt with the judge in his judicial capacity.'" *Id.* (quoting *Mireles*, 502 U.S.

at 12). The Sixth Circuit has observed that the line between judicial acts covered by immunity and

those that are not "is not self-revealing." *Norfleet v. Renner*, 924 F.3d 317, 319 (6th Cir. 2019).

The court added:

> Two illustrations come to mind. If a judge with general criminal jurisdiction ruled that an act amounted to a crime when it did not, he would merely act in excess of jurisdiction and thus be immune from a § 1983 lawsuit challenging his decision. But if a probate judge assumed authority over a criminal case, the judge would act in the clear absence of jurisdiction because he is invested only with authority over wills and the settlement of estates of deceased persons.

*Id.* (internal quotation marks and citations omitted).

First, as to Defendant Cronin, his entry of the amended JOS is the only basis of Meyer's claims against him. Entry of a judgment is clearly a judicial function. The question thus is whether he acted without subject matter jurisdiction. "A judicial officer acts in the clear absence of jurisdiction only if he knows that he lacks jurisdiction, or acts despite a clearly valid statute or case law expressly depriving him of jurisdiction." *Mills v. Killebrew*, 765 F.2d 69, 71 (6th Cir. 1985). As Defendant Kengis noted during the January 15, 2020 hearing, under *People v. Comer*, 500 Mich. 278 (2017), Defendant Cronin should have imposed lifetime electronic monitoring when he issued the original JOS, but *Comer* also established that Defendant Cronin lacked the authority to *sua sponte* amend Meyer's sentence. 500 Mich. at 297. However, *Comer* was not decided until 2017—almost five years after Defendant Cronin entered the amended JOS—and in 2015, the Michigan Court of Appeals held in *Comer* that the trial court had the authority to correct an invalid sentence without limitation as to time. *People v. Comer*, 312 Mich. App. 538, 545 (2015). Thus, it cannot be said that Defendant Cronin acted in the clear absence of all jurisdiction.

With regard to Defendant Kengis, his acts of holding hearings on and denying Meyer's motion were judicial acts clearly within his jurisdiction. The fact that Defendant Kengis initially denied Meyer's motion but ultimately granted it as a Rule 6.500 motion is no grounds for denial of absolute immunity.

11

Finally, Meyer's arguments regarding qualified immunity are misplaced. The immunity at issue here is absolute judicial immunity. Meyer's individual capacity claims against Defendants Cronin and Kengis are barred by absolute judicial immunity.

### 3.    Collateral Estoppel

Finally, the County Defendants argue that collateral estoppel, or issue preclusion, bars Meyer's claims against the County. Defendant Kengis determined in Meyer's state-court civil action that Allegan County lacked authority over the circuit court's decisions in Meyer's criminal case.[5]

"Federal courts must give the same preclusive effect to a state-court judgment as that judgment receives in the rendering state." *Abbott v. Michigan*, 474 F.3d 324, 330 (6th Cir. 2007) (citing 28 U.S.C. § 1738). Because the state-court proceedings occurred in Michigan, the Court applies Michigan law. In Michigan, collateral estoppel has three elements: (1) a question of fact or law essential to the judgment was actually litigated and determined by a valid and final judgment; (2) the parties must have had a full and fair opportunity to litigate the issue; and (3) there must be mutuality of estoppel. *See Storey v. Meijer, Inc.*, 431 Mich. 368, 373 n.3 (1988). An issue is "actually litigated" if the party opposing estoppel "had a full and fair opportunity to litigate the issue." *People v. Gates*, 434 Mich. 146, 156–57 (1990).

All three elements are present. In the state-court case, Meyer sued the County and the State seeking to have the amended JOS revoked and replaced with the original JOS. The County moved to dismiss, arguing that it was not the proper party for the relief Meyer sought because, in Michigan, counties do not control the decisions of the local trial courts that they are required to

---

[5] Because Meyer does not allege a separate factual basis for a claim against County Clerk Bob Genetski, I consider the claim against the County as also asserted against Defendant Genetski.

fund. (ECF No. 18-2 at PageID.252–52.) The court granted the County's motion and dismissed the case with prejudice. (ECF No. 18-3.) The state court thus resolved an issue essential to the judgment that was actually litigated and resulted in a valid final judgment. In addition, there was an identity of parties. Finally, Meyer had a full and fair opportunity to litigate the issue.

Meyer appears to dispute only the last requirement—that he was not given a full and fair opportunity to litigate the issue due to COVID-19 restrictions. He argues that "[t]here was not a single hearing or other action involving the State of Michigan, and the Allegan Court refused to conduct a hearing to recuse Judge Kengis prior to Summary Judgment." (ECF No. 27-1 at PageID.380.) Regardless, Meyer does not argue that he was not afforded an opportunity to respond to the County's motion, nor does he assert that he was prevented from appealing the judgment to the Michigan Court of Appeals if he believed that a basis for reversal existed.

Accordingly, Meyer's claim against the County should be dismissed.[6]

### III.  Conclusion

For the foregoing reasons, I recommend that the Court **grant** the State Defendants' motion to dismiss (ECF No. 22) and the County Defendants' motion to dismiss (ECF No. 17), **deny** ECF Nos. 6 and 15 as **moot**, and dismiss Meyer's action **with prejudice**.

Dated: March 17, 2021                                 /s/ Sally J. Berens
                                                      SALLY J. BERENS
                                                      U.S. Magistrate Judge

---

[6] Even if collateral estoppel did not bar Meyer's claim against the County, he nonetheless fails to state a claim against the County under 42 U.S.C. § 1983 because he does not allege that the County's policy, practice, or custom caused the alleged constitutional violations. *See Nouri v. County of Oakland*, 615 F. App'x 291, 300 (6th Cir. 2015) ("We can quickly affirm dismissal . . . since Nouri's first amended complaint fails to allege any facts supporting a policy or custom of constitutional violations by Hazel Park.").

## NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of

Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to

file objections within the specified time waives the right to appeal the District Court's order.

*See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.

1981).